Case 1:04-cv-01123-MCW   Document 177   Filed 09/30/13   Page 1 of 11

# In the United States Court of Federal Claims

No. 04-1123C
(Filed: September 30, 2013)

* * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| ZIP-O-LOG MILLS, INC., d/b/a, | * | Timber Sale Contract; |
| ZIP-O TIMBER CO., | * | Summary Judgment; Futility of |
| | * | Trial; Effective Termination Date; |
| Plaintiff, | * | Compensation for Termination of |
| v. | * | Timber Sale; RCFC 30(b)(6). |
| | * | |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

Richard W. Goeken, Smith, Currie & Hancock LLP, 1025 Connecticut Avenue, N.W., Suite 600, Washington, D.C. 20038, for Plaintiff. Alan I. Saltman, Smith, Currie & Hancock LLP, 1025 Connecticut Avenue, N.W., Suite 600, Washington, D.C. 20038, of Counsel.

Stuart F. Delery, Jeanne E. Davidson, Bryan G. Snee, and Devin A. Wolak, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C. 20044, for Defendant.

---

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

**WILLIAMS**, J.

Plaintiff Zip-O-Log Mills, Inc., d/b/a Zip-O Timber Co. ("Zip-O-Log") brought this action claiming breach of the Clark timber sale contract by the United States Forest Service ("Forest Service"). Zip-O-Log never began harvesting operations because various environmental challenges and litigation prevented the sale. Currently before the Court are the parties' cross-motions for partial summary judgment on a single issue: the date the Forest Service terminated the contract. The date of termination is crucial for measuring damages because compensation under the contract is dependent upon the bid rates for specified timber in the six months preceding the date of contract termination.

Plaintiff claims that the Forest Service effectively terminated the timber sale contract "near the end of January 2007" citing the testimony of Defendant's Rule 30(b)(6) witness. Alternatively, Plaintiff argues that the contract was effectively terminated on August 9, 2006, the

date the United States District Court for the District of Oregon permanently enjoined logging operations on this sale in <u>Oregon Natural Resources Council Action v. U.S. Forest Service</u>, 445 F. Supp. 2d 1211 (D. Or. 2006).

Defendant contends that April 22, 2010, the date the Government claims represents actual termination of the contract, should be the trigger date for the contract's compensation clause. Alternatively, Defendant contends that the contract remained open at Zip-O-Log's request while the parties conducted negotiations for replacement timber and that the date these negotiations concluded, August 19, 2008, should be the date of effective termination. During oral argument, for the first time Defendant's counsel proposed yet another "actual" termination date, August 23, 2012, the date Zip-O-Log's last contract term extension expired.

As explained below, the Court finds that the Clark timber sale contract was effectively terminated near the end of January 2007, based on the uncontroverted testimony of the Government's Rule 30(b)(6) witness, Steven R. Nelson of the Forest Service. Accordingly, Plaintiff's motion for partial summary judgment is granted, and Defendant's cross-motion for partial summary judgment is denied.

## **Background**[1]

On March 16, 1998, the Forest Service awarded the Clark timber sale contract to Zip-O-Log. Plaintiff's Appendix ("PA") 78. The timber offered in the sale area was 200 to 300 year-old Douglas-fir and Western hemlock timber located on the Lowell Ranger District of the Willamette National Forest in Oregon. PA 77.

The contract's termination date was March 31, 2001. PA 78. The termination clause, CT8.2, provided:

> CT8.2 – TERMINATION. (10/96) The Chief, Forest Service, by written notice, may terminate this contract, in whole or in part, (a) to comply with a court order, regardless of whether this sale is named in such an order, upon determination that the order would be applicable to the conditions existing on this sale; or (b) upon a determination by the Chief that the continuation of all or part of this contract would:
>
> (i)   cause serious environmental degradation or resource damage;
> (ii)  be significantly inconsistent with land management plans adopted or revised in accordance with Section 6 of the Forest and Rangeland Renewable Resources Planning Act of 1974, as amended;
> (iii) cause serious damage to cultural resources pursuant to CT6.24#;
> (iv)  adversely affect species listed as threatened or endangered under the Endangered Species Act, 16 U.S.C. 1531, <u>et</u> <u>seq</u>., or a sensitive species, identified by the Regional Forester.

---

[1] This background is derived from the appendices to the parties' motion papers.

>Compensation for termination under this provision shall be calculated pursuant to CT9.5 [except under circumstances not applicable here].

PA 78b.

>Clause CT9.5 governing "compensation for contract termination" states:
>
>CT9.5 – SETTLEMENT. (8/95) If this contract is terminated by Forest Service under CT8.2, Purchaser agrees that liability of the United States shall be limited to the sum of (1) the value of unused Purchaser Credit; (2) estimated expenditures for felling, bucking, lopping, skidding, and decking any products so processed, but not removed from Sale Area because of the termination action; (3) out-of-pocket expenses involved in acquiring and holding the contract such as maintaining performance bonds and cash deposits; and (4) the difference between (a) Current Contract Rates for the remaining uncut volume and (b) bid rates paid for comparable timber on the same National Forest during the preceding 6-month period multiplied times the remaining uncut volume. Comparable timber is timber of similar size and quality with similar topography and access. Cost estimates for items listed in (2) shall be based upon Forest Service appraisal methods in use on the date contract is terminated.

PA 78a.

After completing required road construction work, Zip-O-Log advised the Forest Service that it intended to start harvesting operations at the beginning of the season on May 1, 1999. PA 80. However, on May 19, 1999, the Forest Service informed Zip-O-Log that the National Marine Fisheries Service had listed the Upper Willamette Spring Chinook salmon as a threatened and endangered species under the Endangered Species Act therefore this timber sale would "not be available for harvest until August or September, 1999." PA 80, 82.[2]

On September 27, 2000, the Forest Service and the National Marine Fisheries Board concluded that the Clark timber sale was not likely to adversely affect the Spring Chinook salmon, but the sale's suspension remained in effect as the result of a stipulated settlement in a lawsuit brought by the Oregon National Resources Defense Council and other environmental advocacy groups against the Forest Service. See Or. Natural Res. Council v. U.S. Forest Serv., Civ. No. C98-942 (W.D. Wash.) ("ONRC Action I"); Defendant's Appendix ("DA") 29-42, 50-52. As part of the settlement, the Forest Service voluntarily agreed to suspend the Clark timber sale until it had surveyed and managed the sale area for red tree voles. DA 31, 38, 45.

During the Clark sale's suspension, Zip-O-Log requested multiple contract term adjustments to extend the contract's termination date. DA 27, 53, 56, 200, 220, 256, 295. The contracting officer granted Zip-O-Log's last request for a contract term adjustment, dated

---

[2] The Endangered Species Act requires federal agencies to ensure that their proposed actions are not likely to jeopardize the continued existence of any listed species. 16 U.S.C. § 1536(a)(2) (1994).

November 24, 2008, which extended the contract's termination date to August 23, 2012. DA 296.

On May 9, 2003, three years after the settlement agreement in ONRC Action I, environmental advocacy groups filed another action in the United States District Court for the District of Oregon, alleging that the Forest Service submitted insufficient supplemental environmental reports for the Clark timber sale and other timber sales that failed to satisfy National Environmental Policy Act ("NEPA") requirements. Or. Natural Res. Council v. U.S. Forest Serv., Civ. No. 03-CV-613 (D. Or.) ("ONRC Action II"); DA 79-94. On November 21, 2003, the ONRC Action II court concluded that the Forest Service violated NEPA by authorizing logging on six timber sales without preparing requisite NEPA analyses and issued a permanent injunction directing the Forest Service to complete a new NEPA analysis on the Clark timber sale, among others, before continuing operations. DA 120-26. To comply with the November 21, 2003 injunction in ONRC Action II, the Forest Service prepared new supplemental environmental assessments. DA 127-30.

Meanwhile, on December 1, 2003, Zip-O-Log filed a claim with the contracting officer, requesting damages in the amount of $2,155,645.62 plus interest due to the Forest Service's suspension of the Clark timber sale contract. PA 81. In a final decision dated May 15, 2004, the contracting officer denied Zip-O-Log's claim for damages, with the exception of Zip-O-Log's claim for $14,538.89 representing interest on cash deposits Zip-O-Log paid to the Forest Service and bonding costs incurred by Zip-O-Log in holding the Clark contract during the suspension. PA 85-89.

On August 9, 2006, the District Court for the District of Oregon concluded that the Forest Service's supplemental environmental assessments were insufficient to satisfy NEPA requirements and continued the injunction. Or. Natural Res. Council v. U.S. Forest Serv., 445 F. Supp. 2d 1211, 1232 (D. Or. 2006). The District Court remanded the matter to the Forest Service, directing the Forest Service to "at a minimum prepare supplemental [environmental assessments] which consider a full range of alternatives, including a no action alternative for each sale, based on impacts to survey and manage species considered in conjunction with other environmental impacts the agency has identified on these sales." Id. at 1231. The Forest Service has not completed any environmental analyses for the Clark timber sale since that remand order. PA 117 (Nelson Decl. at ¶ 5); Def.'s Cross-Mot. 7.

On January 25, 2007, Zip-O-Log notified the Forest Service that it was interested in obtaining replacement timber for the Clark timber. DA 256. The Forest Service offered Zip-O-Log timber from several sale areas, but Zip-O-Log rejected that timber because it was not comparable to the timber in the Clark sale. DA 173-74, 279, 289. On August 19, 2008, the contracting officer informed Zip-O-Log:

> A review of the Willamette National Forest 5 Year Timber Sale Action Plan indicates that there are no projects significantly different from the range of product we have offered to date. Therefore, we do not anticipate any projects specifically meeting your identified criteria in our current and outyear program.

DA 294.

On July 14, 2009, Zip-O-Log submitted a supplement to its December 1, 2003 claim under the Contract Disputes Act ("CDA") seeking an additional $2,029,131.55 plus interest, "for compensation for the Forest Service's effective termination of the Clark timber sale contract" and for amounts in addition to the amounts sought in Zip-O-Log's December 1, 2003 claim. PA 90.[3] Zip-O-Log did not articulate the precise date of the claimed effective termination. In its supplemental CDA claim, Zip-O-Log stated:

> [T]he Forest Service decided not to conduct the necessary additional environmental analyses required to comply with Judge King's rulings in Oregon Natural Resources Council Action v. United States Forest Service ("ONRC Action"), 445 F. Supp. 2d 1211 (D. Or. 2006). By failing to prepare the necessary environmental analyses to allow the sale to go forward, the Forest Service effectively terminated the Clark timber sale contract.

PA 90 (citation omitted). Zip-O-Log maintained that its supplemental CDA claim arose from the same operative facts as its December 1, 2003 claim, "specifically the ongoing 'suspension' of the [Clark timber] sale for the past 10+ years." PA 90.

On April 22, 2010, Thomas Peterson, Director of Forest Management, Forest Service, issued a letter to Zip-O-Log stating: "I am terminating your Clark Timber Sale awarded in March 1998, Contract #095145 on the Middle Fork Ranger District, Willamette National Forest as of July 14, 2009. This is the date that you indicated you were no longer interested in replacement volume and filed an amended claim with the contracting officer." PA 93. The Forest Service indicated it would make a determination as to damages under Clause CT9.5. PA 93.

On April 26, 2010, the contracting officer issued a final decision determining that the Clark Timber Sale had been effectively terminated on July 14, 2009. PA 94-111. The contracting officer stated: "[t]he Clark Timber Sale Contract was terminated pursuant to authority under 36 CFR 223.116(b) by Thomas Peterson, Director of Forest Management, effective July 14, 2009." PA 105.[4] The contracting officer concluded that Plaintiff was entitled to $275,626.04 for unused earned purchaser credits and out-of-pocket expenses involved in acquiring and holding the Clark timber sale contract. PA 111.

---

[3] While Zip-O-Log's supplemental claim referenced "clause C9.5 of the contract," the Clark timber sale contract included clause CT9.5, which contains the same methodology for computing compensation.

[4] Clause 223.116(b) of Title 36 provides:

(b) Cancellation will be by the Chief, Forest Service. Authority to cancel contracts under paragraph (a)(1) through (4) of this section may be delegated to Regional Foresters for sales within their authorization. All contract cancellations under paragraph (a)(5) of this section shall be by the Chief, Forest Service, whose decision shall be the final agency decision.

36 C.F.R. § 223.116(b) (2009).

**Procedural History**

On September 4, 2012, the Court granted the parties' request for leave to file cross-motions for summary judgment on a single issue: "the date of contract termination, be it constructive or actual." Scheduling Order, Sept. 4, 2012. During oral argument on December 6, 2012, the Court denied the parties' cross-motions for partial summary judgment because the record did not support a finding as to the contract termination date. Oral Arg. Tr. 69-71, Dec. 6, 2012.

During oral argument on December 6, 2012, Defendant's counsel represented that there were no documents or witnesses identifying the date the Forest Service decided not to prepare NEPA analyses. Oral Arg. Tr. 56-57, Dec. 6, 2012. The Court urged Defendant to "comb [its] files" for documentation of the timing of the Forest Service's decision that it would not do an environmental analysis and thus could not permit logging on the sale. Oral Arg. Tr. 70, 72, Dec. 6, 2012.

Following oral argument, the Court conducted multiple status conferences with the parties. On December 13, 2012, the Court ordered Defendant to complete its search for documents reflecting its decision on how to implement the August 9, 2006 injunction. Defendant replied: "Our efforts have not revealed any documents that directly reflect a decision by the Government to implement (or not to implement) the efforts that would have satisfied the conditions of the August 9, 2006 injunction…." Def.'s Resp. to Dec. 13, 2012 Order & App. 1, Jan. 10, 2013.[5]

During a status conference on February 4, 2013, the Court requested Defendant's counsel to contact Government witnesses regarding their recollections about the Forest Service's decision not to go forward with the Clark sale.[6] On May 13, 2013, the Court ordered Defendant to "file declarations of Government witnesses regarding the date on which the Forest Service determined not to comply with the August 9, 2006 injunction in the ONRC Action litigation."

---

[5] For the first time in its response to the Court's order to complete its search for documents regarding how to implement the August 9, 2006 injunction, Defendant proposed another termination date, August 31, 2007, the date the defendants in ONRC Action II voluntarily dismissed their appeal of the August 9, 2006 order. Def.'s Resp. to Dec. 13, 2012 Order & App. 2, Jan. 10, 2013.

[6] Specifically, the Court instructed the Government to contact, at least, the following people: 1) Mr. Schmidt, agency counsel 2) Susan Zike, Litigation Coordinator for ONRC Action 3) DOJ's counsel in ONRC Action 4) Lynn Sullivan, contracting office and 5) Chris Andersen, contracting office. Additionally, on March 20, 2013, the Court ordered Defendant's counsel to complete his canvassing of witnesses by April 8, 2013, including DOJ's counsel in the ONRC Action litigation, Ted Boling, regarding the Forest Service's decision not to go forward with the Clark contract. Order, Mar. 20, 2013.

Order, May 13, 2013.[7]  In response, Defendant designated Steven R. Nelson, Forester with the United States Forest Service, as its Rule 30(b)(6) witness.  Def.'s Resp., May 15, 2013.  Mr. Nelson stated:

> As to when the Forest Service determined that it would not proceed with logging on the affected sales, there is no precise date.  However, it appears that the Forest Service decided to forego any efforts to prepare new NEPA documentation for the sale area near the end of January 2007.  As explained above, this had the effect of preventing the possibility of any logging on the affected sales.
>
> . . .
>
> Following the August 9, 2006 continuance of the injunction against operations on the sales, the Forest Service employees responsible for the environmental work began considering the costs and benefits of re-preparing the NEPA documentation as a prerequisite of proceeding with the six sales.  The contracting office also prepared rough estimates of the costs for canceling the sale.  During budget discussions that occurred in January 2007, all options were considered and, after this point, nobody recalls, nor is there any documentation, discussing the possibility of preparing new or supplemental NEPA documentation.  Of course, no new or supplemental NEPA documentation was ever prepared for the sale areas.

PA 116-17 (Nelson Decl. at ¶¶ 4-5).

## Discussion

**Summary Judgment Standard**

The Court may grant a motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a) of the Rules of the United States Court of Federal Claims ("RCFC"); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A genuine dispute is one that "may reasonably be resolved in favor of either party."  Liberty Lobby, 447 U.S. at 250.  A fact is material if it "might affect the outcome of the suit . . . ."  Id. at 248.

The movant has the burden of establishing the absence of genuine issues of material fact, and any doubt over factual disputes will be resolved in favor of the non-moving party.  Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987).  Once this burden is met, the onus shifts to the non-movant to point to sufficient evidence to show a dispute over a material fact that would allow a reasonable finder of fact to rule in its favor.  Liberty Lobby, 447 U.S. at 256-57.  A court does not weigh each side's evidence when considering a motion for

---

[7] As Defendant recognized, this order should have solicited the date on which Defendant decided to comply with the ONRC Action II Court's injunction by not proceeding with the Clark sale.

7

summary judgment. Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002). Rather, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

When opposing parties both move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Mingus Constructors, 812 F.2d at 1391. Cross-motions for summary judgment "are not an admission that no material facts remain at issue." Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997) (citing United States v. Fred A. Arnold, Inc., 573 F.2d 605, 606 (9th Cir. 1978). "Each party carries the burden on its own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts." Id.

Although summary judgment is a "useful procedural tool to speed the determination of disputes in which no questions of material fact exist, an erroneous grant of summary judgment may deny a party its chance to prove its case at trial." Ne. Sav. v. United States, 63 Fed. Cl. 507, 514 (2005) (citing D.L. Auld Co. v. Chroma Graphics Corp., 714 F.2d 1144, 1146-47 (Fed. Cir. 1983)). "Likewise, an 'improvident denial' of summary judgment may force the parties and the court to bear the expense of an unnecessary trial." Id. (citing D.L. Auld Co., 714 F.2d at 1146-47).

Here, there is another reason the summary judgment procedure is appropriate. After numerous requests by the Court and a diligent investigation, the Government was unable to find any documentation or witness with knowledge of when the Forest Service decided not to prepare new NEPA studies and not to go forward with the Clark sale. Neither party believes a trial would shed any more light on the timing of the Forest Service's decision to forego logging on the Clark sale. Counsel for the Government expressly stated at the August 20 oral argument that a trial was unnecessary: "[B]ased on the facts that are established here based on the documents, no, we don't need to have a trial." Oral Arg. Tr. 25, Aug. 20, 2013. Plaintiff's counsel stated during the status conference on June 25, 2013, that, if there were a trial, he would proffer the 30(b)(6) declaration at the trial as an admission. Defendant's counsel responded that if that were so, then it made more sense to file motions for summary judgment. Status Conf. Tr. 25-30, June 25, 2013. Since there is no evidence other than the Rule 30(b)(6) declaration regarding the date the Government decided not to prepare supplemental NEPA documentation, thereby preventing logging on the Clark sale, a trial would be a futile and wasteful exercise. As such, summary judgment is the optimal procedural vehicle, though the record is scanty.

**Termination of the Clark Timber Sale**

At issue is the date the Clark timber sale contract was terminated, effectively or actually, for purposes of calculating compensation owed to Zip-O-Log under Clause CT9.5.[8] Although

---

[8] Plaintiff alleges that this Court has found, and Defendant agreed, that the Clark timber sale was effectively terminated. Contrary to Plaintiff's arguments, this Court did not make such a ruling during oral argument on the parties' cross-motions for partial summary judgment. To

Defendant contends that there can be no "effective termination" in the face of an actual termination, courts have long recognized that when it becomes clear that a contract will not be performed, it is appropriate to acknowledge that reality and impose a constructive or effective termination. As the Court recognized in another context in Kalvar Corp. v. United States: "the constructive termination for convenience is a legal fiction which imposes the standard limitations of the termination clause upon a plaintiff even though the termination was never actually ordered by the contracting officer. The court in such a case proceeds as if the termination had in fact been ordered." 211 Ct. Cl. 192, 206 (1976). Here, as in the termination for convenience context, it is appropriate to impose an effective termination to acknowledge the reality that as of a certain point in time Plaintiff was not going to obtain its contracted-for timber – thus permitting the calculation of compensation due under Clause CT 9.5.

In Wetsel-Oviatt Lumber Co. v. United States, an analogous situation, the Court of Federal Claims recognized that two timber sale contracts had been effectively terminated where the Forest Service suspended portions of these contracts and deleted timber from the contracts for environmental reasons. 38 Fed. Cl. 563, 567-68, 570 (1997). Specifically, the contracting officer advised Wetsel that "operations in certain units of the Leek and Barney sales would have to remain suspended until a determination regarding modification of those units could be made in light of the Anti-Deficiency Act, 31 U.S.C. § 1341, and that, thereafter, Wetsel would be compensated for any deleted timber." Id. at 567. Although the Forest Service characterized its deletion of timber as a temporary suspension, the Wetsel Court concluded that the contracted-for timber would never be released to the timber purchaser. Id. at 568. The Court stated: "[r]efusal to ever release timber for which [the plaintiff] contracted to harvest is equivalent to governmental cancellation of those parts of the contracts for which timber will never be released." Id. at 570.

Unlike Wetsel, the Forest Service did not delete timber from Zip-O-Log's contract. Nonetheless, the underpinning of the Wetsel Court's finding of effective termination is present here: recognition that the Government refused to ever release the timber Plaintiff contracted to harvest. This refusal is borne out by the testimony of the Government's 30(b)(6) witness, Steven R. Nelson of the Forest Service, who admitted that the Forest Service "decided to forego" preparing new NEPA documentation which was necessary to proceed with the Clark sale. PA 116-17 (Nelson Decl. at ¶¶ 4-5).

The testimony of a Rule 30(b)(6) witness is binding on the Government. See AG-Innovations, Inc. v. United States, 82 Fed. Cl. 69, 80 (2008) ("[T]he governmental or business deponent has an affirmative duty to make available persons who will be able to give complete, knowledgeable and binding answers on its behalf.") (internal quotations omitted); Dairyland Power Co-op. v. United States, 79 Fed. Cl. 709, 714 (2007) (same); Rodriguez v. Pataki, 293 F.

---

facilitate settlement, the Court urged the parties to agree on a contract termination date and directed the Government to search its files for documentation of the Forest Service's decision on implementing the injunction in ONRC Action II. Defendant, while agreeing to search its files, did not concede that there was an effective termination. Nor did Defendant ask the Court to adopt a position inconsistent with its current position, as Plaintiff suggested in arguing judicial estoppel.

9

Supp. 2d 305, 311 (S.D.N.Y. 2003).  Mr. Nelson's declaration provides the best evidence of the timing of the Clark contract's effective termination because there is no contemporaneous documentation of the Forest Service's decision not to go forward either with the supplemental NEPA analysis or the Clark sale.  The Court concludes the Clark timber sale contract was effectively terminated "near the end of January 2007."  PA 116-17 (Nelson Decl. at ¶ 4).

Defendant argues that the date the Forest Service determined not to prepare further NEPA documentation does not constitute the date of effective termination.  Defendant contends that the testimony by the agency's Rule 30(b)(6) witness, Steven R. Nelson, "is limited to facts concerning the date when the Forest Service appeared to have ended its efforts to prepare any new environmental documentation in response to the district court's rulings in *ONRC Action 2*" and "Mr. Nelson's declaration does not take the second step that Zip-O asserts, namely, that the Forest Service equates this event with the date of an 'effective termination' in this case."  Def.'s Resp. 20; see Oral Arg. Tr. 10, Aug. 20, 2013.  Mr. Nelson explicitly stated, however, that the Forest Service's decision to forego any efforts to prepare new NEPA documentation for the sale area near the end of January 2007 "had the effect of preventing the possibility of any logging on the affected sales."  PA 117 (Nelson Decl. at ¶ 4).  Mr. Nelson's statements bring this case squarely within Wetsel, where the refusal to ever release Plaintiff's contracted-for timber was "equivalent to governmental cancellation" of the timber contract.  38 Fed. Cl. at 568.  In the case at bar, "preventing the possibility of any logging" on the Clark sale was equivalent to terminating the Clark sale.  PA 117 (Nelson Decl. at ¶ 4).

Notwithstanding the testimony of the agency's own 30(b)(6) witness, Defendant maintains that the Clark timber sale contract was never effectively terminated and was still viable until it was "actually terminated" years later on April 22, 2010, when the Forest Service's Director for Forest Management, Thomas Peterson, sent a letter to that effect to Zip-O-Log.  DA 302.  Defendant's position is problematic.  There is no evidence supporting the date of the April 22, 2010 letter as the actual termination date.  Indeed, the Forest Service itself selected July 14, 2009 as the termination date in its letter of April 22, 2010. DA 302 ("I am terminating your Clark Timber Sale . . . as of July 14, 2009.  This is the date that you indicated you were no longer interested in replacement volume and filed an amended claim with the contracting officer.").[9]

The letter itself has no indicia of reliability of the contract's termination date beyond the happenstance of its issuance.  The record does not explain why the Government waited until April 22, 2010, to issue the purported actual termination letter.  The only activity that transpired after January 2007, was replacement timber negotiations which confirmed that, as in Wetsel, Plaintiff was never going to be able to harvest the contracted-for timber and was attempting to secure substitute performance.

---

[9] At oral argument, Defendant's counsel disavowed that the termination date could have been July 14, 2009, even though both the Forest Service's purported termination letter and the contracting officer's final decision set that July 14, 2009 date as the effective termination date.  Oral Arg. Tr. 26, Aug. 20, 2013 ("[T]he DOJ is not defending that back-dating.  That is not our position.  We are at 2010 for the actual termination date.").

10

Defendant contends that the contract's termination Clause CT8.2 vests the Chief of the Forest Service with authority to terminate the contract "by written notice," and therefore the date of the letter must be the contract's actual termination date.  The Forest Service cannot be permitted to selectively effect termination of a contract on a date of its own choosing years after the decision had been made to forego logging, particularly when there is no principled basis for the date Defendant proposes.  As the Wetsel court noted, the Government may not "take refuge behind procedures required for modification and termination of the contract, even though the government had, in substance, already canceled portions of the contract." 38 Fed. Cl. at 569-70.

Alternatively, Defendant argues that the contract was effectively terminated on August 19, 2008, the date the contracting officer advised Zip-O-Log that the Forest Service did not anticipate being able to offer any projects that met Zip-O-Log's criteria for substitute timber.  DA 294.  Defendant contends that Zip-O-Log's request for replacement timber and the parties' ongoing negotiations necessarily meant that the Clark timber sale was not effectively terminated.  As discussed above, this argument ignores the reality that the parties' discussions about replacement timber only confirmed Zip-O-Log's inability to log the Clark timber sale.  These negotiations were an attempt to remedy the effective termination of that sale.[10]

## Conclusion

Plaintiff's motion for partial summary judgment is **GRANTED**.  Defendant's cross-motion for partial summary judgment is **DENIED**.  Viewing the facts in the light most favorable to the Government, the Court finds that it is undisputed that "the Forest Service decided to forego any efforts to prepare new NEPA documentation for the sale area near the end of January 2007," and that "this had the effect of preventing the possibility of any logging on the affected sales."  PA 117 (Nelson Decl. at ¶ 4).  The Court concludes, as a matter of law, that the Government effectively terminated the Clark sale contract near the end of January 2007.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

---

[10] Defendant's invocation of 36 C.F.R. § 223.85(c) does not change this analysis.  Defendant claims the contract must have remained in effect during the replacement timber negotiations citing 36 C.F.R. § 223.85(c), "Noncompetitive sale of timber."  This regulation states that an agreement for substitute timber requires the contract to be modified to reflect the changes associated with the substitution.  36 C.F.R. § 223.85(c) (2007).  That the contract remained subject to modification for substitute timber does not alter the reality that the Forest Service refused to release the contracted-for timber to Zip-O-Log much earlier -- when it decided not to complete NEPA analyses, thus preventing logging.